## ANA MARIA SUGAR CO., Inc., v. QUINONES.

(Circuit Court of Appeals, First Circuit. June 6, 1918.)

### No. 1295.

1. APPEAL AND ERROR ☞1170(13)—APPEAL INSTEAD OF ERROR—DISREGARDING MISTAKE.

Under Act Sept. 6, 1916, c. 448, § 4 (Comp. St. 1916, § 1649a), requiring a reviewing court to disregard mistake in remedy as between writ of error and appeal, it will treat a case at law, erroneously brought by appeal, as brought by writ of error.

2. APPEAL AND ERROR ☞549(1)—NECESSITY OF BILL OF EXCEPTIONS.

While, on error from final judgment, errors of law appearing on the face of the record proper are available, without bill of exceptions or equivalent, not so as to errors in rulings of law in the course of the trial, which require exceptions at the time, and their incorporation into the record by such means.

3. SALES ☞411—SELLER'S BREACH OF CONTRACT—ACTION—COMPLAINT.

Complaint *held* to state cause of action for breach of contract of sale, by refusal to deliver, except on condition not in contract.

4. COURTS ☞438—SUPREME COURT OF PORTO RICO—FINDINGS.

Under Rev. St. & Codes Porto Rico, § 1141, providing that its Supreme Court on appeal may take cognizance of all the facts as they appear in the record and consider the merits, it may review the evidence in the record, and make such findings of fact as right and justice require, and such rulings of law as are applicable.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. COURTS ⟨key⟩406(1)—SUPREME COURT OF PORTO RICO—DETERMINATION OF DAMAGES—REVIEW.

    Under Rev. St. & Codes Porto Rico, § 5350, providing that, when its Supreme Court reversed a judgment, it shall render such judgment as should have been rendered, except when some matters of fact need ascertainment, or there is uncertainty as to the damages to be assessed or matter to be decreed, that court may in its discretion, review and determine the question of damages; that question having been tried in the court below and the evidence transferred.

6. SALES ⟨key⟩418(2)—FAILURE TO DELIVER—DAMAGES.

    Judgment for difference between contract price of sugar bought for speculation, and market price at end of week within which delivery was to be made, authorized on facts found.

Appeal from Supreme Court of Porto Rico.

Action by Tomas Quinones against the Ana Maria Sugar Company, Incorporated. From a judgment of the Supreme Court of Porto Rico, reversing a judgment of the district court for defendant, and rendering judgment for plaintiff, defendant appeals. Affirmed.

Curtis, Mallet-Prevost & Colt, of New York City (E. Crosby Kindleberger, of New York City, of counsel), for appellant.

Jorge V. Dominguez, of San Juan, P. R., for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and BROWN, District Judge.

BINGHAM, Circuit Judge. This is an action to recover damages for breach of contract. It was brought in the district court of Mayaguez, Porto Rico. In the complaint it was alleged that the plaintiff was a merchant doing business in the city of Mayaguez, and that the defendant was a corporation having a place of business in that city; that on August 4, 1914, in that place the plaintiff bought from the defendant 740 sacks of centrifugal sugar, second class, at the rate of $3.22½ per hundredweight, which, according to the custom of the market, was to be paid for cash on delivery, the same to be delivered on or before the 15th of August, 1914; that thereafter the defendant refused to deliver the sugar unless the plaintiff should previously deposit in the Royal Bank of Canada, at Mayaguez, the sum called for by the invoice for the sugar sold, amounting to $6,079; that the defendant failed to deliver the sugar either in part or in whole, and refuses to deliver the same as provided in said contract; that the plaintiff has always been ready and willing to receive the sugar, to pay the price agreed upon delivery of the same, and comply with all the stipulations of the contract; and that, by reason of the defendant's failure in the premises, plaintiff has suffered damages in the sum of $6,173.24, that being the difference in the price of the sugar due to the rise in the market.

The defendant in its answer denied each and every allegation stated in the complaint, and, as new matter, set forth that the contract of August 4, 1914, was for 748 sacks of cane sugar; that one of the terms of the contract was that the plaintiff was to make a deposit on that day in the Royal Bank of Canada, at Mayaguez, in favor of the defendant, for the purchase price of said sugar, to wit, the sum of $6,079, and that

thereupon the defendant was to deliver the sugar to the plaintiff in partial lots of 160 sacks, the first by railroad upon receipt of the order of the bank to that effect, and the remainder by cartloads during the week next to the aforesaid date; that the provision as to deposit in the bank was a condition precedent to its obligation to deliver the sugar and was imposed and agreed to for the reason that the sugar was subject to a lien to the Royal Bank of Canada, and that the plaintiff failed to comply with this condition.

A trial was had before the district judge, who found that, on August 4, 1914, the plaintiff and defendant entered into a contract by telephone for the purchase and sale of 748 sacks of centrifugal sugar, second class, each sack to weigh 252 pounds, at the price of $3.22½ per hundredweight, to be delivered to the plaintiff in the following manner: One hundred and sixty sacks by railroad as soon as the defendant received the order for delivery from the Royal Bank of Canada, and the remainder to be delivered in cartloads during the week following the making of the contract; that it was agreed that the price of said sugar —$6,079—should be first deposited by the plaintiff in the Royal Bank of Canada, at Mayaguez, to the defendant's credit; that at the time of the execution of the contract the sugar was pledged to the bank; that the plaintiff, without excuse, on the day following the execution of the contract, notified the defendant that he was unwilling to accept the condition as to payment of the purchase price, and that the defendant, on August 6, informed the plaintiff that the above contract was terminated and rescinded for failure to comply with the condition as to payment, which it had a right to do. Having found these facts, the district judge entered judgment dismissing the complaint, with costs to the defendant. Thereupon the plaintiff appealed to the Supreme Court of Porto Rico.

The appeal record embodied the pleadings in the case, the entry of judgment, the opinion of the district judge embodying the findings of fact and rulings of law, a "statement of the case" setting forth the evidence, oral and documentary, introduced at the trial, which the district judge certified to be correct and ordered to form a part of the judgment roll for the appeal. There was also a bill of exceptions setting forth in detail the exceptions taken by the plaintiff to the rulings of the district judge at the trial, which was certified by him as correct, and ordered to form a part of the judgment roll on the appeal. In the Supreme Court the record was amended by the addition of certain documents which had been introduced in evidence, but omitted from the record sent up from the court below, through mistake.

The Supreme Court reviewed the evidence and found that the plaintiff had "clearly established the substantial allegations of his complaint"; that the district court had committed "such manifest error * * * as to require a reversal of its judgment"; "that they were thoroughly convinced by the whole record that in the conversation by telephone, on the 4th of August, which constituted the true contract between the parties, nothing whatever was said about a deposit of the money as a condition precedent to the delivery of the sugar"; that "the market was rising on the 4th and continued to rise"; that the "defend-

ant knew when its letter of confirmation was written that conditions indicated a further advance in price"; that "every hour that passed made the contract more valuable to the purchaser and more disadvantageous to the vendor"; that "the first notice the plaintiff ever had of the proposed requirement as to the deposit of the purchase price was contained in defendant's letter confirming the agreement by telephone, and after the contract of purchase and sale had been consummated"; that it appeared "from the evidence that in the contract made between the plaintiff and defendant it was tacitly stipulated that the price should be paid, following the custom of the market, upon delivery of the article, which was to be transported by the defendant, at its own expense, from the [its] factory to the plaintiff's storehouse, in the city of Mayaguez, during the week next ensuing after the execution of the contract," and that "such delivery was never made by the defendant." Upon the question of damages the court found that the "plaintiff had been doing business in Mayaguez for many years, speculating in sugar and coffee, and had previously bought sugar of the defendant in the same way and upon the same terms and conditions as in the instant case, paying for it on delivery after weighing and inspecting the same"; that "the deal itself was based upon current quotations from the New York market in so far as known at the time, and the question of a fluctuating market was clearly in the minds of both parties"; that "the testimony as a whole leaves no room for doubt that prospective profit or loss according to the rise or fall of prices in the New York market was plainly within the contemplation of the parties," and that they were "inclined to accept the figures of the plaintiff based on the New York prices at the expiration of the period within which the defendant had agreed to deliver the sugar, less the customary discount." It ruled that, according to section 1073 of the Civil Code, indemnity for losses and damages included "not only the amount of the loss which may have been suffered, but also that of the profit which the creditor may have failed to realize"; and it further found and ruled that the "defendant actually sold during the month of August large quantities of sugar at $6.52, apparently including the lot already sold to plaintiff at $3.22½," and that, "whether the difference in price be regarded as damages or as the proceeds of a resulting trust, the profit thus actually obtained by the defendant on the sugar of plaintiff belongs to the latter and not to the former."

It also ruled that the complaint stated facts sufficient to constitute a cause of action. Having made these findings and rulings, judgment was entered for the plaintiff for $6,173.24.

From this judgment the defendant appealed to this court and produces here a transcript of the record as forwarded to the Supreme Court of Porto Rico, together with the opinion of that court embodying the findings of fact above set forth, and the judgment entered thereon, certified by the secretary and recorder of the Supreme Court as agreeing with their originals, and also an assignment of errors in which the defendant complains that the Supreme Court erred (1) in holding that the plaintiff's complaint states facts sufficient to constitute a cause of action; (2) that the plaintiff had proved the essential allegations of his

complaint; (3) in finding that the contract did not provide for a deposit of the purchase price as a condition precedent to the delivery of the sugar; (4) in finding that the sugar was to be paid for upon its delivery, and not prior thereto; (5) in finding that the time of payment was fixed by local custom and impliedly agreed to by the parties; (6) in reviewing the evidence and reversing the finding of fact made by the trial court as to the payment being a condition precedent to the delivery; (7) in failing to consider and give due weight to a certain writing introduced in evidence; (8) in finding that the defendant made no delivery of the sugar; (9) in failing to consider and give due weight to the fact that the plaintiff made no tender of the price of said sugar to the defendant and that said sugar was pledged to the Royal Bank of Canada; (10) in holding that plaintiff was entitled to damages by way of compensation; (11) in finding that the profits arising out of the rise of the price of the sugar in the New York market was contemplated by the parties at the time of the making of the contract; (12) in awarding compensation to the plaintiff based upon the difference between the contract price and the price of the sugar in the New York market at the end of the term alleged to have been contracted for its delivery; (13) in holding that the plaintiff was not under obligation to make reasonable efforts to' acquire sugar of the same kind in the locality where he was doing business, and from other parties; (14) in holding and finding that the defendant broke its contract with the plaintiff, and (15) in giving judgment for the plaintiff upon the facts proved in the record.

According to the act of April 12, 1900 (31 Stat. 85, c. 191, § 35 [Comp. St. 1916, §§ 1215, 3791]), known as the Foraker Act, writs of error and appeals from the final decisions of the Supreme Court of Porto Rico to the Supreme Court of the United States were allowed "in the same manner and under the same regulations and in the same cases as from the Supreme Courts of the territories of the United States," and it was held that, whether the method adopted was writ of error or appeal, the jurisdiction of the Supreme Court of the United States to revise the proceedings below was confined to determining whether the facts found by the Supreme Court of Porto Rico supported its judgment and whether there was material and prejudicial error in the admission or rejection of evidence, manifested by exceptions duly certified. In other words, upon appeal, as well as writ of error, its jurisdiction was limited to reviewing questions of law. Rosaly v. Graham, 227 U. S. 584, 589, 590, 33 Sup. Ct. 333, 57 L. Ed. 655; Monagas v. Albertucci, 235 U. S. 81, 35 Sup. Ct. 95, 59 L. Ed. 139. This act, was, however, in 1911, superseded by section 244 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1157 [Comp. St. 1916, § 1215]). Under the latter act, proceedings equitable in nature were required to be prosecuted from the Supreme Court of Porto Rico to the Supreme Court of the United States by appeal, and the jurisdiction of the latter court in such case was extended to include a review of questions of fact as well as law (Elzaburu v. Chaves, 239 U. S. 283, 36 Sup. Ct. 47, 60 L. Ed. 290), while its review of actions at law was by writ of

error, the same as from a federal District Court. By the act of January 28, 1915 (38 Stat. 804, c. 22, § 3), Congress repealed section 244 of the Judicial Code, and by section 2 of that act amended section 246 of the Code (Comp. St. 1916, § 1223) by providing that:

"Writs of error and appeal from the final judgments and decrees of the Supreme Courts of * * * Porto Rico, wherein the amount involved, exclusive of costs, to be ascertained by the oath of either party or of other competent witnesses, exceeds the value of $5,000, may be taken and prosecuted in the Circuit Courts of Appeals."

[1] The cause of action stated in the complaint is, in its nature, an action at law, and properly should be prosecuted here by writ of error, and not by appeal (Metropolitan R. R. Co. v. District of Columbia, 195 U. S. 322, 25 Sup. Ct. 28, 49 L. Ed. 219); and prior to September 6, 1916, would probably have been dismissed for want of power in this court to review a matter on appeal not of equitable cognizance. But on that date Congress in 39 Stat. 727, c. 448, § 4 (Comp. St. 1916, § 1649a), provided:

"That no court having power to review a judgment or decree rendered or passed by another shall dismiss a writ of error solely because an appeal should have been taken, or dismiss an appeal solely because a writ of error should have been sued out, but when such mistake or error occurs it shall disregard the same and take the action which would be appropriate if the proper appellate procedure had been followed."

We will therefore treat the case as though it had been brought here by writ of error instead of by appeal.

[2] On writ of error from a final judgment, errors of law appearing on the face of the record proper (Kansas City Ry. Co. v. Carlisle, 94 Mo. 166, 7 S. W. 102; Loeb v. Columbia Township Trustees, 179 U. S. 472, 482, 21 Sup. Ct. 174, 45 L. Ed. 280; Eldorado Coal & Mining Co. v. Mariotti, 215 Fed. 51, 54, 131 C. C. A. 359; 2 Cyc. pp. 1053, 1055; 3 C. J. p. 899) may be availed of without resorting to a bill of exceptions or other equivalent proceeding (Nalle v. Oyster, 230 U. S. 165, 33 Sup. Ct. 1043, 57 L. Ed. 1439; Denver v. Home Savings Bank, 236 U. S. 101, 35 Sup. Ct. 265, 59 L. Ed. 485; Young v. Martin, 8 Wall. 354, 357, 19 L. Ed. 418; Macker v. Thomas, 7 Wheat. 530, 532, 5 L. Ed. 515; Mitsui v. St. Paul Fire & Marine Ins. Co., 202 Fed. 26, 28, 120 C. C. A. 280; Moline Plow Co. v. Webb, 141 U. S. 616, 623, 12 Sup. Ct. 100, 35 L. Ed. 879; Aurora City v. West, 7 Wall. 82, 91, 19 L. Ed. 42; Evans v. Stettnisch, 149 U. S. 605, 607, 13 Sup. Ct. 931, 37 L. Ed. 866; Wilmington v. Ricaud, 90 Fed. 212, 32 C. C. A. 578; United States v. Parrott, Fed. Cas. No. 15,998; 2 Cyc. 1076). But errors in rulings of law occurring in the course of a trial are not a part of the record proper, and in order that they may be reviewed on writ of error by an appellate court must be excepted to at the time they are made (Walton v. United States, 9 Wheat. 651, 657, 6 L. Ed. 182; Railway v. Heck, 102 U. S. 120, 26 L. Ed. 58; Newport News & Mississippi Valley Co. v. Pace, 158 U. S. 36, 15 Sup. Ct. 743, 39 L. Ed. 887), and incorporated into the record by a bill of exceptions or other equivalent proceeding (Suydam v. Williamson, 20 How. 427, 432, 433, 15

L. Ed. 978; England v. Gebhardt, 112 U. S. 502, 505, 5 Sup. Ct. 287, 28 L. Ed. 811; Fisher v. Cockerell, 5 Pet. 248, 253, 8 L. Ed. 114; Ghost v. United States, 168 Fed. 841, 842, 94 C. C. A. 253; Stewart v. Wyoming Ranch Co., 128 U. S. 383, 390, 9 Sup. Ct. 101, 32 L. Ed. 439; Preston v. Prather, 137 U. S. 604, 11 Sup. Ct. 162, 34 L. Ed. 788; Hildreth v. Grandin, 97 Fed. 870, 38 C. C. A. 516; Rio Grande Irrigation Co. v. Gildersleeve, 174 U. S. 603, 19 Sup. Ct. 761, 43 L. Ed. 1103; Rodriguez v. United States, 198 U. S. 156, 164, 25 Sup. Ct. 617, 49 L. Ed. 994).

In this case no requests for rulings of law were submitted by appellant (plaintiff in error) to the Supreme Court of Porto Rico, and no exceptions were taken to the rulings made. This being so, no exceptions were preserved by it which could have been embodied in a bill of exceptions, and, as a consequence, no bill of exceptions was filed and made a part of the record. Such being the case, the only questions presented for our consideration and assigned as error are whether the plaintiff's complaint states a good cause of action, whether the Supreme Court exceeded its jurisdiction in making findings of fact and entering judgment thereon, and whether the facts so found support the judgment which it rendered.

[3] I. As to the first question, we think there is no doubt but that the complaint states a good cause of action for a breach of contract.

[4, 5] II. In an act entitled "An act establishing the Supreme Court of Porto Rico as a court of appeals," approved March 12, 1903, it is provided:

"Section 1. That the Supreme Court of Porto Rico shall hereafter be a court of appeals and not a court of cassation. In its deliberations and decisions, in all cases, civil or criminal, said court shall not be confined to the errors in proceeding [procedure] or of law only, as they are pointed out, alleged or saved by the respective parties to the suit, or as set fourth [forth] in their briefs and exceptions, but in furtherance of justice, the court may also take cognizance of all the facts and proceedings in the case as they appear in the record, and likewise consider the merits thereof, so as to promote justice and right and to prevent injustice and delay." Compilation of Revised Statutes and Codes of Porto Rico, p. 241, § 1141.

This statute vested the Supreme Court with authority to review the evidence contained in the record transferred from the district court of Mayaguez and make such findings of fact as right and justice required and such rulings of law as were applicable to the case, and it was no doubt under the authority here conferred that the Supreme Court acted in making the findings and rulings that it did. And in the same compilation it is further provided:

"(5350) Sec. 306 (as amended by Act of March 8, 1906, page 164). When the judgment, order or decree of the court below shall be reversed, the court shall proceed to render such judgment, order or decree as the court below should have rendered, except when it is necessary that some matters of facts be ascertained, or the damage to be assessed or the matter to be decreed is uncertain, in any of which cases the cause shall be remanded for a new trial in the court below."

As the question of damages had been fully tried in the court below, and the evidence relating thereto, together with the other evidence in-

troduced at the trial, had been included in the record and transferred to the Supreme Court, we think that it was within the power of that court to examine the evidence and say whether the question of damages could properly be determined therefrom, and, if it concluded that it could, to pass upon the question of damages itself without sending the case back for a new trial upon that issue, and, as said in Burnet v. Desmornes, 226 U. S. 145, 148, 33 Sup. Ct. 63, 57 L. Ed. 159:

"There being no question of the power of the Supreme Court, we should be slow to control its discretion on this point."

[6] III. The facts found support the judgment. It is unnecessary to restate them; they sufficiently appear in what has been above set forth.

The judgment of the Supreme Court of Porto Rico is affirmed, with costs to the appellee (defendant in error).